UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONALD GREEN, | ) | Case No. 08cv1803-JLS (BLM) |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION FOR** |
| v. | ) | **ORDER DENYING PETITION FOR** |
| | ) | **WRIT OF HABEAS CORPUS** |
| LARRY SMALL, Warden, et. al., | ) | |
| | ) | [Doc. No. 1] |
| Respondents. | ) | |
| | ) | |

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On September 17, 2008, Petitioner Donald Green, a state prisoner proceeding *pro se* and *in forma pauperis*, filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. No. 1 ("Petition"). On March 17, 2009, Respondents filed an Answer to the Petition. Doc. No. 18 ("Answer"). Petitioner filed a Traverse on April 27, 2009. Doc. No. 20 ("Traverse"). For the reasons set forth below, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

//

## **Background**

The following facts regarding Petitioner's commitment offense are taken from the Los Angeles County Superior Court's order denying Petitioner's Petition for Writ of Habeas Corpus in In re Donald Green, No. BH005024:

> The record reflects that on April 29, 1993, several members of the 74 Hoover Crips gang, including petitioner and the victim, were hanging out near a residence. The victim's younger cousin approached the gang in order to join the gang. He was told to prove himself by fighting another member who was petitioner's friend. After five to ten minutes of fighting, the would-be new affiliate ran off. Petitioner began bragging about his friend's victory over the victim's cousin, which in turn led to another physical confrontation that lasted approximately fifteen minutes before the other members broke it up. The victim left with his friends, but then realized he had forgotten his jacket. He sent a friend back to find it. While he waited for his companion to return with the jacket, petitioner approached with a loader revolver. He fired several shots, hitting the victim three times. The victim died as a result. Petitioner claims that he only intended to fire in the air, but that he was drunk and blacked out while shooting.

Lodgment 3 at 1.[1]  Petitioner was convicted of second degree murder and the use of a firearm and was sentenced to a term of twenty years to life in prison with a minimum eligible parole date of December 2, 2007. Lodgment 2 at 1.  On March 14, 2007, the Board of Parole Hearings ("Board") held Petitioner's Initial Parole Consideration Hearing ("the hearing") at Calipatria State Prison.  See Lodgment 2.

Petitioner was present at the hearing and represented by state-appointed attorney Bill Garled.  Id. at 1-2.  Petitioner was advised of his rights and the parole procedures.  Id. at 6-9.  Throughout the hearing, Petitioner was given the opportunity to answer questions,

---

[1]This Court presumes the state court's factual determinations to be correct absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

present evidence and give affirmative testimony in his favor. See e.g., id. at 62-71, 87-92. The topics discussed during the hearing included the circumstances surrounding the commitment offense, Petitioner's criminal record, Petitioner's institutionalized behavior and disciplinary record, Petitioner's gang affiliation, Petitioner's social history, Petitioner's physical and psychological health history, Petitioner's work history and education, and Petitioner's future plans for life after release from prison. See generally, id. at 12-92. Petitioner and his attorney gave closing statements arguing for a finding that Petitioner was suitable for parole. Id. at 84-92.

After the hearing, the Board determined that Petitioner was not suitable for parole because (1) the offense was carried out in an especially callous and dispassionate manner, (2) the motive for the crime was inexplicable, (3) Petitioner had not accepted full responsibility for his actions, (4) Petitioner had an escalating record of violence, assaultive behavior and unstable social relationships, (5) Petitioner had not demonstrated evidence of participation in self-help programs or evidence of a positive change, and (6) Petitioner had not demonstrated adequate plans for life after prison. Id. at 93-96. The Board commended Petitioner's vocational training and work in the prison's kitchen. Id. at 96-97. However, the Board determined that Petitioner's recent changes in behavior did not outweigh the factors establishing unsuitability for parole. Id. at 97. The Board recommended that Petitioner demonstrate an ability to maintain the positive changes in his behavior by remaining disciplinary free and fully participating in self-help programs. Id. at 99-100. Petitioner was denied parole for five years. Id. at 102.

On May 30, 2007, Petitioner filed two formal complaints in regards

to the hearing and the performance of his state-appointed attorney. Lodgment 1 at 13.[2]  On August 9, 2007, Petitioner filed a Petition for Writ of Habeas Corpus with the Los Angeles County Superior Court.  Id. at 1.  The petition was denied on February 5, 2008.  Lodgment 3 at 1. The Petitioner then filed a Petition for Writ of Habeas Corpus with the California Court of Appeal, Second Appellate District on May 15, 2008. Lodgment 4 at 1.  The California Court of Appeal summarily denied the Petition.  Lodgment 5 at 1.  On June 6, 2008, Petitioner filed a Petition for Review with the California Supreme Court, which was also summarily denied.  Lodgment 6 at 1; Lodgment 7 at 1.  Finally, Petitioner filed the instant Petition for Writ of Habeas Corpus on September 17, 2008.  Doc. No. 1.

## **Legal Standard**

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254(d), as amended by the AEDPA:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[2]Where the Petition and lodgments are not consecutively paginated, the Court has cited page numbers by counting pages through the document.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Summary denials do constitute adjudications on the merits. See Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002). Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court's decision is an "unreasonable application" of clearly established federal law where the state court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). "[A] federal habeas court may not issue a writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . . Rather, that application must be *objectively unreasonable*." (emphasis added) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Williams, 529 U.S. at 412.

1    Finally, habeas relief is also available if the state court's
2  adjudication of a claim "resulted in a decision that was based on an
3  unreasonable determination of the facts in light of the evidence
4  presented in state court."  28 U.S.C. § 2254(d)(2).  A state court's
5  decision will not be overturned on factual grounds unless this Court
6  finds that the state court's factual determinations were "objectively
7  unreasonable in light of the evidence presented in the state court
8  proceeding."  See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see
9  also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that
10 "[r]easonable minds reviewing the record might disagree" does not render
11 a decision objectively unreasonable).  This Court will presume that the
12 state court's factual findings are correct, and Petitioner may overcome
13 that presumption only by clear and convincing evidence.  28 U.S.C.
14 § 2254(e)(1).

15                           **Discussion**

16    Petitioner presents three grounds for habeas relief.  First,
17 Petitioner contends that the Board deprived him of his "liberty interest
18 in parole" and violated his right to due process under the Fifth and
19 Fourteenth Amendments by failing to comply with California Penal Code
20 Section 3041(a).  Petition at 14.  Second, Petitioner argues that the
21 Board violated his right to due process by failing to comply with
22 California Code of Regulations, Title 15, Section 2403(a).  Id. at 40.
23 Third, Petitioner claims that his Sixth Amendment right to effective
24 assistance of counsel was denied by his attorney's prejudicial
25 performance at the hearing.  Id. at 43-44.

26 **A. First Claim for Relief: Due Process Violation**

27    The Due Process Clause prohibits the government from depriving an
28 inmate of a liberty interest without adequate procedural safeguards.

1    See U.S. Const. amends. V, XIV.   Therefore, in analyzing whether an

2    inmate's due process rights were violated, courts must look at two

3    distinct elements: (1) whether the inmate was deprived of a

4    constitutionally protected liberty interest, and (2) "whether the

5    procedures attendant upon that deprivation were constitutionally

6    sufficient." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989);

7    Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).

8    **1. Liberty Interest in Parole**

9    The United States Supreme Court established in Greenholtz v.

10   Inmates of Nebraska Penal, 442 U.S. 1 (1979), and Board of Pardons v.

11   Allen, 482 U.S. 369 (1987) that:

12   > while there is no constitutional or inherent right of a
     > convicted person to be conditionally released before the
13   > expiration of a valid sentence, a state's statutory scheme,
     > if it uses mandatory language, creates a presumption that
14   > parole release will be granted when or unless certain
     > designated findings are made, and thereby gives rise to a
15   > constitutional liberty interest.

16   Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003)(quoting McQuillion

17   v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002)).   The Ninth Circuit

18   explicitly has held that California's statutory parole scheme uses the

19   mandatory language contemplated by Greenholtz and Allen and thereby

20   "creates in every inmate a cognizable liberty interest in parole which

21   is protected by the procedural safeguards of the Due Process Clause."

22   Biggs, 334 F.3d at 914.   Specifically, the Ninth Circuit compared the

23   language of California's parole statute[3] to the state parole statutes

24

25   [3]California Penal Code § 3041(b) states, in relevant part:

26   The panel or the board, sitting en banc, *shall* set a release date *unless*
     it determines that the gravity of the current convicted offense or
27   offenses, or the timing and gravity of current or past convicted offense
     or offenses, is such that consideration of the public safety requires a
28   more lengthy period of incarceration for this individual, and that a
     parole date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(b) (emphasis added).

1    at issue in <u>Greenholtz</u> and <u>Allen</u>[4] and found that California's parole
2    statute "clearly parallels the language used in the Nebraska and Montana
3    statutes addressed in <u>Greenholtz</u> and <u>Allen</u>, respectively." <u>Id.</u>  Like
4    the statutes at issue in <u>Greenholtz</u> and <u>Allen</u>, the Ninth Circuit found
5    that California's parole statute creates a presumption that parole
6    release will be granted when or unless certain findings are made.  <u>Id.</u>
7    Therefore, California prisoners similarly possess a liberty interest in
8    parole release.  <u>Id.</u>

9        Respondents recognize this jurisprudence, but maintain that the
10   current state of clearly established federal law recognizes no such
11   liberty interest for California prisoners.  Answer at 7.  Respondents
12   argue that <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995), and <u>Wilkinson v.</u>
13   <u>Austin</u>, 545 U.S. 209, 229 (2005), abrogated <u>Greenholtz</u>'s methodology for
14   establishing a liberty interest in parole.  <u>Id.</u>  However, the Ninth
15   Circuit expressly rejected this argument in <u>Sass v. California Board of</u>
16   <u>Prison Terms</u>.  461 F.3d at 1125.  The court again held in <u>Sass</u> that
17   "California's parole scheme gives rise to a cognizable liberty interest
18   in release on parole . . . [and] this liberty interest is created, not
19   upon the grant of a parole date, but upon the incarceration of the
20   inmate." <u>Id.</u> at 1127 (internal quotations omitted).  Accordingly, the
21   Court finds that Petitioner possesses a liberty interest in parole.
22   //
23   //
24

25   ____4The Nebraska statute at issue in <u>Greenholtz</u> states, in relevant part, that
     whenever a prisoner is considered for parole the Board "*shall* order his release *unless*
26   it is of the opinion that his release should be deferred ... ."  Neb. Rev. Stat. § §
     83-1, 114(1) (1976) (emphasis added).

27       The Montana statute at issue in <u>Allen</u> states, in relevant part, that the Board
     "*shall* release on parole ... any person confined in the Montana state prison or the
28   women's correction center ... *when* in its opinion there is reasonable probability that
     the prisoner can be released without detriment to the prisoner or to the community."
     Mont. Code Ann. § 46-23-201 (1985) (emphasis added).

08cv1803-JLS (BLM)

## 2. Adequate Procedural Protections

Because Petitioner has a liberty interest in parole, the Court must determine whether Petitioner received adequate procedural protections for his due process rights.  The United States Supreme Court has stated that due process "is flexible and calls for such procedural protections as the particular situation demands."  <u>Greenholtz</u>, 442 U.S. at 12 (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)).  A proper parole consideration hearing "affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances.  The Constitution does not require more."  <u>Greenholtz</u>, 442 U.S. at 16.

In his Traverse, Petitioner argues that his parole hearing did not meet these due process standards.  Traverse at 4.  However, a review of the record reveals that the hearing satisfied and even exceeded these minimal procedural due process requirements.  In particular, Petitioner was present at the hearing and was represented by counsel.  Lodgment 2 at 1-2.  He was informed of his rights at the outset of the hearing.  <u>Id.</u> at 6-9.  Petitioner and his counsel were given the opportunity to present arguments and introduce evidence in favor of a finding of suitability for parole.  <u>See</u> <u>e.g.</u>, <u>id.</u> at 62-71, 87-92.  Petitioner answered questions about the commitment offense, his vocational training during incarceration, and his plans for parole, among other things.  <u>See</u> <u>generally</u>, <u>id.</u> at 12-92.  Petitioner and his counsel delivered closing arguments.  <u>See</u> <u>id.</u> at 84-92.  After the hearing, the Board informed Petitioner that it relied upon the following factors in denying his parole: (1) Petitioner carried out the commitment offense in an especially callous and dispassionate manner, (2) Petitioner's motive for

1 the crime was inexplicable, (3) Petitioner has not accepted full
2 responsibility for his actions, (4) Petitioner has an escalating record
3 of violence, assaultive behavior and unstable social relationships,
4 (5) Petitioner has not demonstrated evidence of participation in self-
5 help programs or evidence of a positive change, and (6) Petitioner has
6 not demonstrated adequate plans for life after prison.  Lodgment 2 at
7 93-96.  In sum, the Court finds that Petitioner's parole hearing
8 contained adequate procedural protections under the Due Process Clause.

9 **3. Sufficiency of the Evidence**

10 Under clearly established federal law, the Due Process Clause also
11 requires that a decision to deny parole satisfy the United States
12 Supreme Court's "some evidence" standard.[5]  <u>Superintendent, Mass. Corr.</u>
13 <u>Inst., Walpole v. Hill</u>, 472 U.S. 445, 454-57 (1985); <u>Sass</u>, 461 F.3d at
14 1128-29.  Although this minimal standard "might be insufficient in other
15 circumstances, '[t]he fundamental fairness guaranteed by the Due Process
16 Clause does not require courts to set aside decisions of prison
17 administrators that have some basis in fact.'" <u>Sass</u>, 461 F.3d at 1129
18 (quoting <u>Hill</u>, 472 U.S. at 456).

19 Petitioner claims that the Board failed to meet the "some evidence"
20 standard in his case and, therefore, deprived him of his liberty
21 interest in parole.  Petition at 24-26.  In evaluating the merits of
22 Petitioner's claims, the Court must look through to the last reasoned
23 state court decision.  <u>See</u> <u>Ylst</u>, 501 U.S. at 801-06.  Petitioner

24 _____

25 [5]Respondents deny that the "some evidence" standard is clearly established
federal law. Answer at 8.  Rather, they contend that the "some evidence" standard was
developed in the context of prison disciplinary hearings and is not applicable to
26 parole hearings.  <u>Id.</u> at 10.  However, the Ninth Circuit has held that the standard
applies to federal habeas review of parole board decisions that deny a prisoner's
27 parole release.  <u>Biggs</u>, 334 F.3d at 915 (citing <u>Jancsek v. Oregon Bd. of Parole</u>, 833
F.2d 1389, 1390 (9th Cir. 1987)).  This Court may look to Ninth Circuit case law for
28 assistance in determining what constitutes the applicable "clearly established federal
law." <u>See</u> <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 2000).

presented this claim to the state courts in all three of his habeas petitions.  Lodgments 1, 4 and 6.  Because the California Supreme Court and the Court of Appeal summarily denied Petitioner's petitions [Lodgments 5 and 7], the last reasoned state court decision on this issue came from the Los Angeles County Superior Court [Lodgment 3].  The Los Angeles County Superior Court applied the "some evidence" standard and concluded that the record contained sufficient evidence to support the Board's finding that Petitioner was unsuitable for parole.  Lodgment 3 at 1.  The Superior Court stated:

> The Board concluded that petitioner was unsuitable for
> parole and would pose an unreasonable risk of danger to
> society and a threat to public safety.  The Board based its
> decision on several factors, including his commitment
> offense.
>
> The nature of the commitment offense may indicate that a
> prisoner poses an unreasonable risk of danger to society
> when the offense is especially heinous, atrocious or cruel.
> In this case, the Board found that the commitment offense
> was especially heinous because the motive was very trivial
> in relation to the offense. . . . To the extent that there
> was a motive in this case, the motive appears to be based on
> an earlier fight between the victim's cousin and
> petitioner's friend for gang initiation.  There appears to
> be no reason for the shooting at all other than bravado.
> The Board was justified in finding that this motive was
> materially less significant that those which conventionally
> drive people to commit murder.  A person whose motive for
> murder cannot be explained is unusually unpredictable and
> dangerous.  Therefore, there is some evidence that
> petitioner poses and unreasonable risk of danger to society.
>
> In determining whether a prisoner poses a risk of danger to
> society, the Board may consider his institutional
> behavior[,] as well as many psychological factors.  Since
> entering prison, petitioner has received nineteen CDC 115's
> many of which are for serious misconduct such as mutual
> combat and battery.  His most recent violent 115's were for
> battery on an inmate and attempted battery on a peace
> officer in April of 2000.  Petitioner's psychological
> evaluation agreed, listing him as a moderate risk of danger
> if released.  The psychologist also diagnosed him with a
> personality disorder [and] with antisocial personality
> disorder.  Additionally, there is some evidence that
> petitioner is unsuitable for parole based on his previous
> history of violence.  At the age of sixteen petitioner was

11

convicted of attempted murder after he shot at his step-
father following a heated argument over unauthorized use of
his sister's bicycle. . . . He became a member of the Hoover
Crips when he was fourteen years old and continued to
affiliate with the gang until 2001, although he has never
formally debriefed.  Based on these factors, the Court finds
that there is some evidence to support the Board's
determination that petitioner is unpredictable and poses an
unreasonable risk of danger to society if released on
parole.

Lodgment 3 at 1-2 (internal citations omitted).

This Court agrees with the reasoning of the Superior Court.  In
assessing whether or not there is "some evidence" supporting the Board's
denial of parole, courts must consider the regulations guiding the
Board's decision.  See Biggs, 334 F.3d at 915.  The California Code of
Regulations provides that at initial parole consideration hearings, the
Board "shall first determine whether the life prisoner is suitable for
release on parole.  Regardless of the length of time served, a prisoner
shall be found unsuitable for and denied parole if in the judgment of
the panel the prisoner will pose an unreasonable risk of danger to
society if released from prison."  Cal. Code Regs. tit. 15
§ 2402(a)(2009); see also Irons v. Carey, 479 F.3d 658, 662-63 (9th Cir.
2007).  The Board must consider "all relevant, reliable information
available."  Cal. Code Regs. tit. 15 § 2402(b)(2009).

The Regulations also list factors tending to indicate whether or
not an inmate is suitable for parole.  Factors tending to show
suitability for parole include: (1) no juvenile record, (2) stable
social history, (3) signs of remorse, (4) commitment offense was
committed as a result of stress which built up over time, (5) Battered
Woman Syndrome, (6) lack of criminal history, (7) age is such that it
reduces the possibility of recidivism, (8) plans for future including
development of marketable skills, and (9) institutional activities that

indicate ability to function within the law.  <u>Id.</u> at § 2402(d).  On the other hand, factors tending to show unsuitability for parole include: (1) the commitment offense was committed in an especially heinous, atrocious or cruel manner, (2) previous record of violence, (3) unstable social history, (4) sadistic sexual offenses, (5) psychological factors such as a lengthy history of severe mental problems related to the offense, and (6) prison misconduct.  <u>Id.</u> at § 2402(c).  The factors listed are merely guidelines and "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel."  <u>Id.</u> at § 2402(c)-(d).

As the Superior Court noted in its opinion, the record contains considerable evidence supporting the Board's finding that Petitioner poses an unreasonable risk of danger to society.  Lodgment 3 at 1-2. Here, as previously stated, the Board appropriately cited the following factors for its decision: (1) Petitioner carried out the commitment offense in an especially callous and dispassionate manner, (2) Petitioner's motive for the crime was inexplicable, (3) Petitioner has not accepted full responsibility for his actions, (4) Petitioner has an escalating record of violence, assaultive behavior and unstable social relationships, (5) Petitioner has not demonstrated evidence of participation in self-help programs or evidence of a positive change, and (6) Petitioner has not demonstrated adequate plans for life after prison.  Lodgment 2 at 93-96.  Although the Ninth Circuit previously has cautioned against undue reliance on an unchanging factor, such as the commitment offense, the Board relied heavily on post-commitment evidence in this case, including Petitioner's nineteen disciplinary citations. <u>See</u> <u>Hayward v. Marshall</u>, 512 F.3d 536, 545 (9th Cir. 2008)(citing <u>Biggs</u>, 334 F.3d at 916); Lodgment 2 at 94.  Petitioner's substantial post-

commitment disciplinary record alone provides the requisite "some evidence" establishing that Petitioner would pose an unreasonable risk to society if released on parole.  See Penn v. Ayres, 2008 WL 1930661, at *7-8 (N.D. Cal. 2008) (reasoning that an inmate's two post-conviction disciplinary reports undermined his argument that he had been rehabilitated and was suitable for parole).

In spite of this evidence, Petitioner argues that the Board misapplied the "some evidence" standard to his case and impermissibly denied parole.  Petition at 24-26.  First, Petitioner argues that the "test is not whether some evidence supports the reasons the [Board] cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety."  Id. at 26(citing Hayward v. Marshall, 512 F.3d 536, 543 (9th Cir. 2008)). However, the Board followed the language of Hayward cited by Petitioner and properly evaluated whether some evidence indicated that Petitioner's release would unreasonably endanger public safety.  Lodgment 2 at 93. Second, Petitioner suggests that the Board ignored the factors weighing in his favor when applying the some evidence test, including his vocational training and work record in the prison's kitchen.  Petition at 16-17.  Yet, the Board explicitly noted that it took these factors into consideration and commended Petitioner for his progress in these areas.  Lodgment 2 at 96-97.  After weighing the factors for and against Petitioner's suitability for parole, the Board reasonably determined that the "positive aspects of [Petitioner's] behavior do not outweigh the factors for unsuitability."  Id. at 97.

Because ample evidence in the record supports the Board's decision to deny parole, this Court finds that the Superior Court's decision to deny Petitioner's claims on the merits was reasonable and consistent

1   with clearly established federal law.   Accordingly, this Court

2   **RECOMMENDS** that Petitioner's first ground for relief be **DENIED**.

3   **B. Second Claim for Relief: Due Process Violation**

4         Petitioner argues that his federal right to due process also was

5   violated by the Board's failure to establish a uniform term of

6   imprisonment under the matrix of base terms set forth in California Code

7   of Regulations, Title 15, Section 2403.   Petition at 40-41.   Because the

8   Los Angeles County Superior Court did not review the merits of this

9   claim, this Court reviews the issue *de novo*.   *See* Lodgment 2; <u>Pirtle v.</u>

10  <u>Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002) ("[W]hen it is clear that

11  a state court has not reached the merits of a properly raised issue, we

12  must review it *de novo*.").

13        As previously discussed, the Court's first step in analyzing

14  whether an inmate's due process rights were violated is to determine

15  whether the inmate was deprived of a constitutionally protected liberty

16  interest.   <u>Ky. Dep't of Corr.</u>, 490 U.S. at 460.   Petitioner frames his

17  second claim as a federal due process issue, but in essence, his second

18  claim challenges the Board's application of California law.   <u>See</u>

19  Petition at 40-43; Traverse at 4.   Federal habeas corpus review is not

20  available for violations of state law.   <u>See</u> 28 U.S.C. § 2254(a); <u>Estelle</u>

21  <u>v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a

22  federal habeas court to reexamine state-court determinations on state-

23  law questions.   In conducting habeas review, a federal court is limited

24  to deciding whether a conviction violated the Constitution, laws, or

25  treaties of the United States.").   Accordingly, this Court is without

26  authority to grant federal habeas relief on Petitioner's second claim.

27        In any event, Petitioner's claim fails on the merits.   California

28  Code of Regulations, Title 15, Section 2403(a) clearly states that the

Board "shall set a base term for each life prisoner *who is found suitable for parole*." Cal. Code Regs. tit. 15 § 2403(a) (emphasis added). Likewise, California Penal Code, Section 3041(b) provides that the Board shall set a release date *unless* it determines that the prisoner is not suitable for parole. Cal. Penal Code § 3041(b) (emphasis added); <u>see</u> <u>also</u> <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1098-99 (Cal. 2005) (confirming that the Board need not set a base term if the prisoner is deemed unsuitable for parole). Here, the Board made the determination that Petitioner is not suitable for parole. Lodgment 2 at 93. Thus, the Board's decision to not set a uniform term of imprisonment did not violate California law. Accordingly, this Court **RECOMMENDS** that Petitioner's second claim for relief be **DENIED**.

**C. Third Claim for Relief: Ineffective Assistance of Counsel**

Petitioner alleges that his Sixth Amendment right to effective assistance of counsel was denied by his attorney's prejudicial performance at the hearing. Petition at 43-45. Because the Los Angeles County Superior Court did not review the merits of this claim, the Court reviews the issue *de novo*. <u>See</u> Lodgment 3; <u>Pirtle</u>, 313 F.3d at 1167 ("[W]hen it is clear that a state court has not reached the merits of a properly raised issue, we must review it *de novo*.").

Petitioner is not entitled to habeas relief on this claim because the United States Supreme Court has not "clearly established" that the Sixth Amendment right to counsel applies to parole hearings, or that due process requires inmates to be represented by counsel at such hearings. <u>See</u> <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); <u>Greenholtz</u>, 442 U.S. at 16 (due process is satisfied if the opportunity to be heard is provided and the inmate is given notice of

1  the reasons for denial of parole); <u>Dorado v. Kerr</u>, 454 F.2d 892, 896

2  (9th Cir. 1972) (due process does not entitle California state prisoners

3  to counsel at parole hearings).  Although the California Penal Code

4  provides that a "prisoner shall be entitled to be represented by

5  counsel" at an initial parole consideration hearing, <u>see</u> Cal. Penal Code

6  § 3041.7, the "denial of state-created procedural rights is not

7  cognizable on habeas corpus review unless there is a deprivation of a

8  substantive right protected by the Constitution." <u>Bonin v. Calderon</u>,

9  59 F.3d 815, 842 (9th Cir. 1995).  Therefore, despite Petitioner's

10 statutory right, his ineffective assistance of counsel claim cannot

11 provide the basis for habeas relief.  <u>Bonin</u>, 59 F.3d at 842; <u>see also</u>

12 <u>Leque v. Brown</u>, 2007 WL 4219392 at *2 (N.D. Cal. 2007).

13     Even if Petitioner had a constitutionally guaranteed right to

14 counsel at his parole hearing, the Court finds that his claim fails on

15 the merits.  For ineffective assistance of counsel to provide a basis

16 for habeas relief, Petitioner must satisfy a two-prong test.  First, he

17 must show that counsel's performance was deficient.  <u>Strickland v.</u>

18 <u>Washington</u>, 466 U.S. 668, 687 (1984).  "This requires a showing that

19 counsel made errors so serious that counsel was not functioning as the

20 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>  The

21 "[r]eview of counsel's conduct is highly deferential and there is a

22 strong presumption that counsel's conduct fell within the wide range of

23 reasonable representation." <u>Hensley v. Crist</u>, 67 F.3d 181, 184 (9th

24 Cir. 1995); <u>Strickland</u>, 466 U.S. at 689.  Second, Petitioner must

25 establish counsel's deficient performance prejudiced the defense.

26 <u>Strickland</u>, 466 U.S. at 687.  This requires a showing that counsel's

27 errors were so serious they deprived Petitioner "of a fair trial, a

28 trial whose result is reliable." <u>Id.</u>  To satisfy the test's second

prong, Petitioner must show a reasonable probability that the result of the proceeding would have been different but for the error.  <u>Williams</u>, 529 U.S. at 406; <u>Strickland</u>, 466 U.S. at 694.

Petitioner contends that counsel failed to (1) set goals for the suitability hearing, (2) prepare a memorandum to introduce the points in his favor, (3) address prior suitability hearings, (4) make an opening statement, and (5) make a closing statement.  Petition at 44-45. Because of these alleged failures, Petitioner argues that counsel's performance "fell below an objective standard of reasonableness" and resulted in an unreliable and "fundamentally unfair" parole hearing. <u>Id.</u>

The Court has reviewed the record in its entirety and finds that counsel's performance was reasonable under the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 688 (there are no "specific guidelines" or requirements so long as an attorney's performance falls within an "objective standard of reasonableness").  The constitutional right to counsel does not require counsel to articulate his goals or submit a memorandum of points prior to a parole hearing.  <u>Id.</u>  Furthermore, counsel's alleged failure to address prior suitability hearings is completely immaterial in this case as the hearing at issue was Petitioner's first parole consideration hearing.  Lodgment 2 at 1. While the failure to make an opening or closing statement may fall below an objective standard of reasonableness in other situations, counsel's performance here was entirely reasonable.  At the outset of the hearing, the Presiding Commissioner and Petitioner's attorney discussed whether an opening statement was necessary.  <u>Id.</u> at 11-12.  The record reflects that opening statements are not customary and that Petitioner's attorney did not think there were any unusual facts or circumstances in this case

that would warrant an opening statement. <u>Id.</u>  Contrary to Petitioner's allegations, counsel delivered a thorough closing statement.  Lodgment 2 at 84-87.  Although Petitioner may take issue with counsel's strategy in hindsight, the Court concludes that counsel's performance falls well within "the wide range of reasonable professional assistance."  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.

Even assuming that trial counsel's performance could be considered deficient, Petitioner fails to demonstrate that absent counsel's performance, there is a reasonable probability that he would have been granted parole.  <u>See</u> <u>Strickland</u>, 466 U.S. at 696.  Given the strength of the evidence weighing against parole in this case as previously discussed, the Court cannot find that counsel's actions deprived Petitioner of a fair hearing.  Accordingly, the Court concludes that Petitioner fails to meet the <u>Strickland</u> ineffective assistance of counsel standard.  Thus, the Court **RECOMMENDS** that Petitioner's third ground for relief be **DENIED**.

**4. Evidentiary Hearing**

Finally, Petitioner requests an evidentiary hearing in his Traverse, but fails to specify the nature of the facts he seeks to present or their relevance to his claims.  Traverse at 4.  An "evidentiary hearing is not required on issues than can be resolved by reference to the state record."  <u>Totten v. Merkle</u>, 137 F.3d 1172, 1176 (9th Cir. 1998)(citing <u>United States v. Birtle</u>, 792 F.2d 846, 849 (9th Cir. 1986) (an evidentiary hearing is not required "if the 'motion and the files and the records of the case conclusively show that Petitioner is entitled to no relief'")).  Here, there are no new relevant facts to discover and Petitioner has not proffered any.  Accordingly, the Court finds that an evidentiary hearing is not warranted in this case.  Thus,

1 | Petitioner's request is **DENIED**.

2 | **CONCLUSION AND RECOMMENDATION**

3 | For the reasons set forth above, this Court **RECOMMENDS** that
4 | Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

5 | **IT IS HEREBY ORDERED** that any written objections to this Report
6 | must be filed with the Court and served on all parties **no later than**
7 | **September 4, 2009.** The document should be captioned "Objections to
8 | Report and Recommendation."

9 | **IT IS FURTHER ORDERED** that any reply to the objections shall be
10 | filed with the Court and served on all parties **no later than**
11 | **September 25, 2009.** The parties are advised that failure to file
12 | objections within the specified time may waive the right to raise
13 | those objections on appeal of the Court's order. See Turner v.
14 | Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

15 | **IT IS SO ORDERED.**

16 |

17 | DATED:  August 14, 2009

18 |

19 | BARBARA L. MAJOR
20 | United States Magistrate Judge